1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   DAVID ALLEN MILLER,                    )   Case No.: 1:15-cv-0063-JLT
                                            )
12              Plaintiff,                  )   ORDER DIRECTING ENTRY OF JUDGMENT IN
                                            )   FAVOR OF DEFENDANT CAROLYN COLVIN,
13       v.                                 )   ACTING COMMISSIONER OF SOCIAL
                                            )   SECURITY, AND AGAINST PLAINTIFF DAVID
14   CAROLYN W. COLVIN,                     )   ALLEN MILLER
     Acting Commissioner of Social Security, )
15                                          )
                Defendant.                  )
16                                          )

17          David Allen Miller asserts he is entitled to disability insurance benefits and supplemental

18   security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the administrative

19   law judge erred in evaluating the record, and seeks judicial review of the denial of his applications for

20   benefits.  Because the ALJ's decision is supported by substantial evidence, the decision is

21   **AFFIRMED**.

22                              <u>**BACKGROUND**</u>

23          In the applications for benefits, Plaintiff alleged disability beginning January 1, 2010.  (Doc. 9-3

24   at 13.)  The Social Security Administration denied Plaintiff's applications at the initial level and upon

25   reconsideration. (*Id*.)  After requesting a hearing, Plaintiff testified before an ALJ. (*Id.* at 36.)  The ALJ

26   concluded Plaintiff was not disabled and issued an order denying benefits on August 8, 2013. (*Id.* at

27   20.)  The Appeals Council denied review of the decision on November 7, 2014, at which time the

28   ALJ's determination became the final decision of the Commissioner of Social Security.  (*Id.* at 2.)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

The Commissioner established a sequential five-step process for evaluating a claimant's

alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.    Medical Background and Evidence**

Plaintiff "has a history of seizure disorder, West Nile virus, asthma and substance abuse." (Doc. 9-12 at 6.)  In January 2010, he had an electroencephalogram that showed his seizure episodes were "consistent with psychogenic nonepileptiform seizures." (*Id.* at 97.)  Dr. Loveneet Singh advised Plaintiff "to follow up with a psychiatrist and a psychologist[,] and he agreed to do so." (*Id.*) However, Plaintiff did not seek treatment with a Fresno County Mental Health therapist until more than a year later, on March 30, 2011.  (*See* Doc. 9-11 at 36.)

Dr. Roger Wagner performed an internal medicine evaluation on September 21, 2011.  (Doc. 9-12 at 100.)  Plaintiff reported he had hearing problems in his left ear, asthma, and a seizure disorder. (*Id.*)  Plaintiff told Dr. Wagner that tubes had been recommended for his ear, but Plaintiff "declined to have this done." (*Id.*)  He said he was able to hear on the phone with his right ear, and Dr. Wagner observed that Plaintiff had "no problems understanding one on one" during the exam.  (*Id.*)  Plaintiff reported he had "seizures every 3 to 4 days," which included loss of consciousness, loss of bladder control, and tongue biting." (*Id.* at 100-01.)  Plaintiff also told Dr. Wagner that he was able to do "all of the chores around the home, including taking out the trash, doing the cleaning and cooking." (*Id.* at 101.)  Dr. Wagner observed that Plaintiff was able to "walk at a brisk pace back to the exam room without assistance," but had "a very strange pseudo fall" when asked to walk on his toes.  (*Id.*)  Plaintiff also "refused to raise his arms above throat level." (*Id.* at 101-02.)  Dr. Wagner concluded Plaintiff had "essentially no limitations" with standing, sitting or walking." (*Id.* at 104.)  According to Dr. Wagner, Plaintiff "should not climb or balance on ladders of scaffolds," but had no further postural limitations. (*Id.*)  Further, Dr. Wagner opined Plaintiff "should not work around heights or machinery," and "avoid

3

working around chemicals … given the history of asthma." (*Id.*)

Dr. Mary Lewis performed a consultative psychiatric evaluation on November 11, 2011. (Doc. 9-12 at 107.) Plaintiff reported he was depressed and had recently been diagnosed with bipolar disorder, but "the meds help." (*Id.*) Plaintiff said he "can't work because [he's] deaf in one ear and… [had] to read lips." (*Id.* at 108.) However, Dr. Lewis noted Plaintiff "did not have any difficulty hearing during [the] evaluation, nor did he ask to have any questions repeated." (*Id.*) Plaintiff admitted to smoking cigarettes, marijuana, methamphetamine, and cocaine. (*Id.*) He stated that he last smoked methamphetamine and cocaine "two months ago." (*Id.*) He reported he had a twelfth grade education and "was not enrolled in special education classes." (*Id.*) Plaintiff said he was "not willing to work in any job position," and was "not actively seeking employment and [was] not involved in a retraining program." (*Id.*at 109.) Dr. Lewis observed that Plaintiff's thought process was "linear, logical, coherent and goal directed." (*Id.*) According to Dr. Lewis, Plaintiff's ability to think rationally and use common since was "not significantly impaired." (*Id.* at 110.) She found Plaintiff's recent memory recall and attention and concentration were "satisfactory" based upon his ability to recall three items after five minutes and "successfully count by 2s to 20 and back to zero." (*Id.*) He also was able to "complete[] a three-step command." (*Id.*) Dr. Lewis concluded Plaintiff was "not significantly impaired" with the ability to understand and remember simple instructions, maintain concentration and attention, accept instructions from a supervisor, or work "at a consistent pace." (*Id.* at 112.)

Dr. Greg Ikawa completed a psychiatric review technique form and mental residual functional capacity assessment on December 12, 2011. (Doc. 9-13 at 2-15.) Dr. Ikawa believed Plaintiff was "not significantly limited" with the ability to understand, remember, and carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*Id.* at 13.) In addition, Dr. Ikawa determined Plaintiff was "not significantly limited" with adaptation and social interaction. (*Id.* at 14.) He opined Plaintiff had mild restrictions in his activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (*Id.* at 10.) Dr. Ikawa concluded Plaintiff was "[a]ble to sustain" simple, routine tasks. (*Id.* at 15.)

Dr. Pamela Ombres also reviewed the record on December 12, 2011 and offered a physical residual functional capacity assessment.  (Doc. 9-13 at 16-23.)  She determined Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk about six hours in an eight-hour day, and sit for about six hours in an eight-hour day.  (*Id.* at 17.)  Dr. Ombres opined Plaintiff was never able to balance, but had no other postural limitations.  (*Id.* at 17-18.)  According to Dr. Ombres, Plaintiff was required to "avoid even moderate exposure" to fumes, odors, dusts, gases, poor ventilation, machinery, and heights.  (*Id.* at 19.)  She opined Plaintiff did not have other visual, manipulative, communicative, or environmental limitations.  (*Id.* at 18-19.)  Dr. Ombrese concluded Plaintiff was able to perform work at the medium exertion level with the identified precautions for his seizure disorder.  (*Id.* at 23.)

Plaintiff's treating psychologist, Dr. Josefina Collado, completed portions of a "Mental Disorder Questionaire (sic) for Evaluation of Ability to Work" on May 6, 2013.  (Doc. 9-16 at 33-37.)  She noted that she began treating Plaintiff in October 1996, and saw him approximately every 9-12 weeks.  (*Id.* at 34.)  Dr. Collado indicated Plaintiff had been diagnosed with a mental disorder, which was "recorded in clinical records," but did not identify the disorder in the comments section.  (*Id.*)  Dr. Collado believed that Plaintiff's "posture, gait, mannerisms, or general appearance" could impair his ability to work.  (*Id.* at 33.)  Dr. Collado believed Plaintiff had a "significant impairment" with his memory, concentration, intelligence, and judgment.  (*Id.*)  Additionally, Dr. Collado indicated Plaintiff had mood swings, hallucinations, confusion, and social isolation that would impair his ability to perform full-time work.  (*Id.*)  She opined that Plaintiff's activities of daily living were impaired to the degree that he required "assistance from others in order to achieve a socially acceptable standard of self-care," and his social functioning would impair the ability to work with supervisors, co-workers, or the public.  (*Id.* at 34.)  Dr. Collado did not complete the mental residual functional capacity questionnaire, which requested evaluations of Plaintiff's ability to concentrate; understand, remember, and carry out instructions; regarding concentration, social interaction, or adaptation.  (*See id.*at 35-37.)

Dr. Collado completed a second form on May 16, 2013.  (Doc. 9-16 at 39-44.)  Her opinions remained the same regarding Plaintiff's limitations.  (*Compare* Doc. 9-16 at 33-34 *with* 39-40.)  She again did not complete the mental residual functional capacity questionnaire.  (*Id.* at 41-44.)

5

**B.**     **Administrative Hearing Testimony**

Plaintiff testified at a hearing before the ALJ on June 25, 2013.  (Doc. 9-3 at 36.)  He reported that he lived in a "sober living home … for people with drugs and alcohol problems" for two months.  (*Id.* at 39, 42.)  Plaintiff said he did not have a driver's license and would either catch a bus or call someone to get a ride when he needed transportation.  (*Id.* at 39.)  Plaintiff said he did not require assistance with personal care and was able to do chores including washing dishes, laundry, cooking meals, and mowing the grass.  (*Id.* at 40-41.)

He reported that he had "one to two seizures per month," and it "depend[ed] on the level of [his] medication."  (Doc. 9-3 at 43.)  Plaintiff said his seizures lasted about "a half hour… to an hour," and it took "anywhere from two to three hours to recover."  (*Id.*)  He said that he would sleep for "three to four hours" after a seizure episode.  (*Id.*)

Plaintiff said he also had asthma for which he used an inhaler "as needed."  (Doc. 9-3 at 44.)  He also reported that he had nerve problems that he attributed to having West Nile virus.  (*Id.*)  Plaintiff said his hands "go completely numb and tingling" and he could lose his ability to grip items "five to 10 times a day."  (*Id.* at 45.)  He said that he had "a hard time standing and walking," and wore leg braces from his knees down to his ankles.  (*Id.* at 46.)

Plaintiff reported he was deaf in his left ear, and "partially deaf" in his right ear.  (Doc. 9-3 at 45.)  Plaintiff said he expected to be "fully deaf probably here in a another year or two."  (*Id.*)  He explained doctors offered to do surgery on his left ear before he "completely" lost his hearing but at the time he "was on drugs so[he] had to turn it down because [he] couldn't pass the drug test to get the surgery."  (*Id.* at 45-46.)

Also, Plaintiff reported that he had issues with memory, and forgot both recent things and from his past.  (Doc. 9-3 at 49.)  He said he had difficulty reading, and "graduated under special ed classes."  (*Id.* at 49-50.)  Plaintiff testified that when he was learning, "the only way [he] could understand how to do anything" was to be told, rather than read.  (*Id.* at 50.)  Plaintiff said he suffered from depression, preferred to stay by himself, heard voices yelling at him, and was seeing a therapist.  (*Id.* at 51-52, 64.)

Plaintiff estimated that he was able to "lift or carry about 25 pounds," which he said was limited due to "a bad back."  (Doc. 9-3 at 47.)  In addition, he believed he was "able to stand for about an hour

to two hours before [he] fall[s] down." (*Id.* at 48.)  Plaintiff said he could "force" himself to walk "about a mile or two," depending on how far he needed to go.  (*Id.*) He estimated that he could sit "an hour or two" before his lower back started hurting and his "butt starts getting real tingling and real numb," with his legs "wiggling back and forth."  (*Id.*)  Plaintiff said he did not climb stairs because he would "fall backwards."  (*Id.*)

Vocational expert Judith Najarian (the "VE") testified after Plaintiff at the hearing, and classified Plaintiff's past work—using the *Dictionary of Occupational Titles*[1]—as a home attendant, DOT 354.377-104  (Doc. 9-3 at 66.)  She explained the job required "medium" physical exertion, and Plaintiff performed the work at a lower than normal skill set, because he "wasn't passing medication, he wasn't doing any note taking," or "operating any equipment.  (*Id.*)

The ALJ asked the VE to consider "a hypothetical person of the same age, education, [and] work background" as Plaintiff.  (Doc. 9-3 at 66.)  The ALJ indicated the "person could lift and carry 50 pounds occasionally, 25 pounds frequently;" sit, stand or walk six hours in an eight-hour day;" and "needed to avoid concentrated exposure [t] dust, gases, fumes and … working at heights or around hazardous machinery or driving."  (*Id.*)  The VE opined a person with these limitations was able to perform Plaintiff's past work as a home attendant, "as he performed it."  (*Id.* at 66-67.)  In addition, the VE opined the worker could perform other work, including linen room attendant, DOT 222.387-030; transporter patient, DOT 355.677-014; and counter supply worker, DOT 319.687-010.  (*Id.* at 67.)

Second, the ALJ asked the VE to add to the limitations, and consider an individual who could not "climb[] ladders, ropes or scaffolds" and was limited to "occasional climbing of stairs."  (Doc. 9-3 at 68.)  In addition, the worker was limited to "simple, routine tasks."  (*Id.*)  The VE opined the home attendant position "as normally performed" would be eliminated.  (*Id.*)  However, the VE indicated the other three jobs "would still be available."  (*Id.*)

Next, the ALJ asked the VE to consider a person who was able to lift and carry 20 pounds occasionally and 10 pounds frequently; sit six hours; and "stand or walk two [hours] with occasional

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1   climbing stairs, no ladders, ropes or scaffolds, heights, driving, dangerous machinery and the asthma

2   precautions again." (Doc. 9-3 at 68.) This person was also limited to "simple, routine tasks." (*Id.*)

3   The VE indicated that with such restrictions, the person was unable to perform Plaintiff's past work,

4   but could work in other "unskilled, sedentary" positions such as a bard hand, DOT 920.687-030;

5   atomizer assembler, DOT 706.684-030; and tier, DOT 529.687-138. (*Id.* at 68-69.)

6         Plaintiff's counsel asked the VE to consider a person with the same physical limitations as the

7   first hypothetical, with mental limitations that "affect an individual's ability to perform simple work

8   for two hours at a time, or for eight hours per day," including "[m]emory, concentration, intelligence

9   and judgment." (Doc. 9-3 at 70.) Counsel then clarified that the person was "going to have trouble

10  concentrating, focusing, making judgments and remembering tasks" and would be "off task" for

11  twenty percent of the day. (*Id.*) The VE opined that "no work" would be available for such a person.

12  (*Id.*) Similarly, the VE opined that a person who was off task for ten percent of the day was "going to

13  get let go" from a job. (*Id.* at 71.)

14  **C.      The ALJ's Findings**

15        Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

16  gainful activity after the alleged onset date of January 1, 2010. (Doc. 9-3 at 15.) At step two, the ALJ

17  found Plaintiff's severe impairments included: "non-epileptiform seizure disorder, asthma, mild

18  lumbar degenerative disc disease, cocaine dependence, amphetamine dependence, history of marijuana

19  dependence, a mood disorder, and a bipolar disorder." (*Id.* at 16.) At step three, the ALJ determined

20  Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a

21  Listing. (*Id.* at 16-17.) Next, the ALJ determined:

22      [T]he claimant has the residual functional capacity to lift and/or carry 50 pounds
        occasionally and 25 pounds frequently, sit, stand, and/or walk 6 to 8 hours in an 8-hour
23      workday, and occasionally climb stairs, but he must avoid concentrated exposure to
        dust, gases, and fumes, and all exposure to heights, dangerous machinery, driving, and
24      climbing ladders, ropes or scaffolds; in addition, the claimant can perform simple
        routine tasks.
25

26  (*Id.* at 17.) Based upon this RFC, the ALJ determined Plaintiff was "unable to perform any past

27  relevant work." (*Id.* at 25.) However, the ALJ found there were "other jobs that exist in significant

28  numbers in the national economy" that Plaintiff could perform, including linen room attendant,

transporter patient, and counter supply worker.  (*Id.* at 25-26.)  Consequently, the ALJ concluded
Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 26.)

## DISCUSSION AND ANALYSIS

Appealing the decision finding he was not disabled, Plaintiff asserts the ALJ erred in evaluating
the medical evidence and the credibility of his subjective complaints.  (Doc. 20 at 10-12.)  In addition,
Plaintiff contends the ALJ did not properly address his mental limitations in the residual functional
capacity, and erred in relying upon the vocational expert's testimony where it did not address those
limitations.  (*Id.* at 12-15.)  On the other hand, Defendant argues the ALJ properly evaluated the
evidence, and asserts the ALJ's decision should be affirmed by the Court.  (Doc. 22 at 6-12.)

### A.    Plaintiff's Credibility

In assessing credibility, an ALJ must determine first whether objective medical evidence shows
an underlying impairment "which could reasonably be expected to produce the pain or other symptoms
alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*,
947 F.2d 341, 344 (9th Cir. 1991)).  Where the objective medical evidence shows an underlying
impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility
finding must be based on clear and convincing reasons."  *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec.
Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ determined Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged symptoms." (Doc. 9-3 at 22.)  However,
the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these
symptoms [were] not entirely credible . . . ."  (*Id.*)  Consequently, the ALJ was required to set forth
clear and convincing reasons for rejecting Plaintiff's testimony regarding his limitations.

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are
not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or
between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately
explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from
physicians concerning the nature, severity, and effect of the symptoms of which the claimant
complains.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d
947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness,

inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility).

In this matter, the ALJ considered a number of credibility factors including Plaintiff's daily activities, inconsistent statements, conflicts between Plaintiff's testimony and the objective medical record, Plaintiff's failure to comply with treatment, effectiveness of treatment, his history of substance abuse, poor work history, and the failure to seek treatment.  (Doc. 9-3 at 21-24.)  However, Plaintiff contends the ALJ erred in relying upon "lack of treatment as a basis for [the] adverse credibility finding," because he was unable to "afford a doctor and the necessary exams."  (Doc. 20 at 12.)

### 1.    Plaintiff's daily activities

A claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse credibility determination.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  Similarly, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

In *Burch v. Barnhart*, the ALJ found that claimant's daily activities suggested that she "quite functional" because she was "able to care for her own personal needs, cook, clean and shop." *Id.*, 400 F.3d 676, 680 (9th Cir. 2005).  Likewise, here, the ALJ observed that Plaintiff "described an extensive range of activities of daily living, including dressing and showering himself, doing his own dishes, cooking, doing laundry, shopping, [and] mowing the grass."  (Doc. 9-3 at 22.)  In addition, the ALJ noted Plaintiff reported he could engage in "social activities, such as visiting with family, fishing, and camping."  (*Id.*)  Thus, the ALJ concluded the "range of activities … [was] inconsistent with his allegations of disability."  (*Id.* at 23.)  As in *Burch*, the activities show Plaintiff is "quite functional," and Plaintiff does not dispute that his activities support the adverse credibility determination.

### 2.    Inconsistent statements

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  In this case, the ALJ observed that Plaintiff made several inconsistent statements regarding the severity

10

of his symptoms, his criminal history, and education.  (Doc. 9-3 at 22-24.)

The ALJ noted Plaintiff gave "conflicting reports of the frequency and duration of his seizures." (Doc. 9-3 at 23.)  As the ALJ observed:  "[H]e testified that he has seizures 1-2 times a month, which last 30-60 minutes; he said it takes 2-3 hours to recover, and he must sleep for 3-4 hours after a seizure …. However, in a seizure questionnaire prepared in 2011, the claimant indicated that he has seizures only once a month, which last 10 minutes, and he said he could resume normal activities after only 1 hour; he did not mention having to sleep after his seizures." (*Id.* at 22, citing Exh. 17E.)  In addition, the ALJ found Plaintiff "made conflicting comments regarding his criminal history by telling one doctor that he has spent at least 10 years in jail, but denying that he ever spent time in jail to the psychological consultative examiner." (*Id.* at 24.)  Further, Plaintiff gave "conflicting statements regarding his education," because "[h]e testified that he was in special education classes, but told the psychosocial consultative examiner that he was never enrolled in special education classes." (*Id.*)

Because the ALJ carried the burden to identify inconsistent statements made by Plaintiff— which he does not dispute— this factor supports the adverse credibility determination.  *See Smolen*, 80 F.3d at 1284.

### 3.    Substance abuse

A history of substance abuse, without more, may be insufficient to discredit a claimant's testimony.  *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1262 (W.D. Wash 2010) ("discounting plaintiff's credibility because of her substance abuse . . . history was improper, given that it bears little relevance to plaintiff's tendency to tell the truth"); *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 429 (W.D.N.Y. 2003) (holding SSR 96-7p, 1996 SSR LEXIS 4 requires more than "history of alcoholism and drug abuse" to discredit the plaintiff's testimony).  However, the Ninth Circuit upheld an ALJ's adverse credibility finding where a claimant's testimony and various statements regarding substance abuse were not consistent. *See Thomas,* 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  For example, in *Thomas*, the ALJ determined the claimant "had not been a reliable historian, presenting conflicting information about her drug and alcohol usage." *Id.*, 278 F.3d at 959. Ms. Thomas denied using drugs and alcohol to one physician, but later "admitted to alcoholism and to smoking 'a little pot.'" *Id.*  On another occasion, Ms. Thomas reported "she had not drunk alcohol for

'several months' and 'had not smoked marijuana for about a year." (*Id.*)  The Ninth Circuit determined the ALJ did not err by inferring "that this lack of candor carries over to her description of physical pain." (*Id.*)

In this case, the ALJ found Plaintiff had "an extensive history of drug use," which diminished his credibility.  (Doc. 9-3 at 24.)  The ALJ also found Plaintiff made inconsistent statements regarding his drug use, because he "testified that he has not used methamphetamine or cocaine since mid-2012, but the medical evidence of record shows daily crack cocaine use in late 2012 and early 2013.  (*Id.* at 23-24, citing Exh. 24.)  Because Plaintiff made inconsistent statements regarding his substance abuse, as in *Thomas*, this factor supports the adverse credibility determination.

### 4.    Effectiveness of treatment

When assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. §§ 404.1529(c), 416.929(c).  Importantly, when a claimant's impairment "can be controlled effectively with medication," it cannot be considered disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In this case, the ALJ noted that Plaintiff "admitted that medication helped his seizures."  (Doc. 9-3 at 22; *see also id.* at 23.)  Also, Plaintiff's asthma was "well-controlled with medications, despite his long history of smoking cigarettes, with few exacerbations since the alleged onset date, and he does not need a nebulizer."  (*Id.* at 23.)  Further, the ALJ found Plaintiff "admitted that psychotropic medications help to control his mood."  (*Id.* at 24.)   Plaintiff does not dispute these findings.  (*See generally* Doc. 21 at 10-15.)  Because the treatment prescribed reduced the severity of Plaintiff's symptoms, the effectiveness of the treatment supports the ALJ's adverse credibility determination.

### 5.    Noncompliance with treatment

The Regulations caution claimants that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  20 C.F.R. §§ 404.1530(a), 416.930(a).  If a claimant fails to follow the prescribed treatment without an acceptable reason, the Commissioner "will not find [the claimant] disabled."  20 C.F.R. §§ 404.1530(b), 416.930(b).  Accordingly, the Ninth Circuit determined, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the

claimant's pain testimony." *Fair*, 885 F.2d at 603.  Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a claimant's subjective complaints lack credibility. *Id.; see also Bunnell*, 947 F.2d at 346.

The ALJ observed that "when the claimant was treated for seizure activity, recent drug activity and/or non-compliance with seizure medications was noted." (Doc. 9-3 at 23.)  For example, the ALJ observed:

> On all 3 occasions that the claimant sought treatment in August of 2012 (August 6, 2012, August 7, 2012, and August 30, 2012), his seizures were attributed to medication non-compliance (Exhibit 27F, pp. 43, 46, 48-50, 51-53), and on August 30, 2012, the claimant admitted smoking crack 2 days prior (Exhibit 27F, pp. 43-46).  On September 30, 2012, the claimant was seen in the emergency room for a seizure-like activity, and he was again noted to be non-compliant with his medication (Exhibit 27F, pp. 37-40).

(Doc. 9-3 at 19.)  Because Plaintiff failed to comply with his treatment—as the ALJ observed—this factor supports the adverse credibility determination.

### 6.    Work history

The ALJ determined that Plaintiff had "a poor work history," which diminished his credibility. (Doc. 9-3 at 24.)  Significantly, the Ninth Circuit determined that a claimant's poor work history is a relevant factor in a credibility determination. *Thomas*, 278 F.3d at 959; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (as part of the credibility assessment, the ALJ considered the claimant's work history); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (finding the ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain").  Thus, Plaintiff's poor work history was a proper consideration by the ALJ and supports the adverse credibility determination.

### 7.    Objective medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained that while "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis" for an adverse credibility determination, but remains "a factor that the ALJ can consider in his credibility analysis").  Because the ALJ did not base the decision solely on the fact that the record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Rather, an ALJ must identify "what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

In this case, the ALJ observed that Plaintiff's physical examination with Drs. Wagner was "essentially within normal limits."  (Doc. 9-3 at 21.)  Although Plaintiff testified he had difficulty with hearing, the ALJ noted Dr. Wagner found Plaintiff had "no problems understanding on examination." (*Id.*)  Similarly, the ALJ observed that Dr. Lewis indicated Plaintiff was able to "communicate without problems." (*Id.* at 13.)  In addition, while Plaintiff testified that he "wears prescribed leg braces at all times," the ALJ found "no indication in the medical evidence of record that leg braces have been prescribed, and the consultative examiner and independent neurological consultant . . . made no mention of the use of or need for leg braces or any other assistive device." (*Id.* at 23, citing Exhibits 16F and 27F.)  Further, the ALJ observed that when examined by Dr. Wagner, Plaintiff "had a negative Romberg, normal station, normal gait, normal finger to nose, all ranges of motion were within normal limits, and straight leg tests were negative." (*Id.* at 21.)

The ALJ also identified medical evidence undermining Plaintiff's complaints of disabling mental impairments, finding the results of the examination with Dr. Lewis were "essentially within normal limits."  (Doc. 9-3 at 21.)  For example, the ALJ noted that despite Plaintiff's testimony that he had a poor memory and was unable to concentrate, Dr. Lewis concluded Plaintiff "had satisfactory reasoning, abstract thinking, judgment, memory, attention, and concentration."  (Doc. 9-3 at 21.)

1    Because the ALJ carried the burden to identify specific evidence in the record, the objective

2    medical record supports the adverse credibility determination.  *See Greger*, 464 F.3d at 972; *Johnson v.*

3    *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's

4    testimony and the relevant medical evidence").

5            8.      Lack of treatment

6            In assessing Plaintiff's credibility about her symptoms, the ALJ may consider "the type, dosage,

7    effectiveness, and side effects of any medication."  20 C.F.R. §§ 404.1529(c), 416.929(c).  Thus, the

8    Ninth Circuit determined the treatment a claimant received is a legitimate consideration in a credibility

9    finding.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding the ALJ properly considered the

10   claimant's failure to request medical treatment commensurate with the "supposedly excruciating pain"

11   alleged as part of the credibility analysis); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

12   2005) (an "ALJ is permitted to consider lack of treatment in his credibility determination').

13           Plaintiff contends that the ALJ erred in considering that he had "little treatment" for his nerve

14   problems, hearing, and back pain.  (Doc. 20 at 12.)  Plaintiff argues his "failure to pursue treatment is

15   not a sufficiently clear and convincing reason to support the ALJ's adverse credibility finding, where,

16   as here, the ALJ simply ignored portions of the record indicating that he could not afford such

17   treatment."  (*Id.*)  Because the ALJ did not offer any findings as to whether the lack of treatment was

18   due to an inability to pay compared to a lack of a need for treatment, the Court agrees this factor does

19   not support the credibility determination.

20           9.      Conclusion

21           When an ALJ sets forth a legally insufficient to support the adverse credibility determination,

22   the Court must consider whether the reliance on invalid reasons was a harmless error.  *See Batson v.*

23   *Comm'r of the Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2003) (applying a harmless error

24   standard where the credibility finding was invalid).  The Ninth Circuit explained, "So long as there

25   remains 'substantial evidence supporting the ALJ's conclusion's on credibility' and the error 'does not

26   negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless."

27   *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197).

28           Here, the ALJ failed to consider whether the lack of treatment was due to Plaintiff's inability to

15

pay.  However, the ALJ set forth numerous clear and convincing reasons for finding Plaintiff lacked credibility—which are not challenged by Plaintiff— including his level of activity, conflicting statements, the effectiveness of the treatment, his failure to comply with the treatment, his history of substance abuse, and poor work history.  These findings are "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.  Thus, the ALJ's partial reliance upon an invalid reason does not negate the validity of the credibility determination and was a harmless error.

**B.    ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*, 81 F.3d at 830.  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence."  *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for

that of the ALJ").  Here, Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Collado, his treating psychiatrist.  (Doc. 20 at 10-11.)  Because the limitations Dr. Collado assessed were contradicted by Drs. Lewis and Ikawa, the ALJ was required to identify specific and legitimate reasons for rejecting Dr. Collado's opinions.

The ALJ indicated he gave "little weight" to the opinions of Dr. Collado concerning the Plaintiff's residual functional capacity.  (Doc. 9-3 at 19.)  The ALJ observed that the opinions were offered in a "check-box questionnaire" and "Dr. Collado did not address the claimant's ongoing cocaine abuse."  (*Id.*)  Significantly, the Ninth Circuit has determined these may constitute specific and legitimate reasons for giving less weight to the opinions of treating physicians.

### 1.    Check-box form of opinion

The opinion of a physician may be rejected when it is "conclusory and brief" and lacks the support of clinical findings.  *Magallanes*, 881 F.2d at 751; *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion").  Consequently, the Ninth Circuit determined that an ALJ may reject or give less weight to a treating physician's opinion that is in the form of a checklist, where the opinion is brief and lacks supportive objective evidence.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v Comm'r of Soc. Security*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("treating physicians' views carried only minimal evidentiary weight" when in the form of a checklist and lacking supportive objective evidence).

For example, in *Burkhark v. Bowen*, the Court determined the ALJ did not err in rejecting the opinion of a treating physician where the doctor "provided nothing more than a statement of his unsupported opinion."  *Id.*, 856 F.2d 1336, 1339 (9th Cir. 1988).  The court found "[t]here was no description -- either objective or subjective -- of medical findings, personal observations or test reports upon which [the physician] could have arrived at his conclusion."  *Id.*  Without such information, the Court found there was "no error" by the ALJ rejecting the physician's opinions that the claimant was disabled.  (*Id.*)

Similarly, as the ALJ observed, Dr. Collado offered her opinions in a check-box forms, which

17

did not include "any diagnoses, signs, symptoms, or objective findings to support the conclusions therein." (Doc. 9-3 at 22; *see also* Doc. 9-16 at 33-37, 39-44.)  Where the form called for comments, Dr. Collado did not provide further information.  For example, although Dr. Collado indicated Plaintiff suffered from a "diagnosed mental disorder," she did not identify the disorder.  (Doc. 9-16 at 33, 39.)  Similarly, she checked "yes" to indicate that Plaintiff's mood or affect would impair his ability to work.  (*Id.*)  Although the forms indicated that comments were "required if [she] checked Yes," Dr. Collado offered no explanation,   (*Id.*)  Given the lack of Dr. Collado's failure to identify any clinical findings or observations that supported her conclusions, the ALJ did not err in giving less weight to the opinion of Dr. Collado.

2.     Failure to consider Plaintiff's substance abuse

A physician's opinion regarding a claimant's mental impairments may be given less weight or rejected because of the claimant's substance abuse.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Thus, an ALJ may reject an opinion by a physician who fails to explain the effect of the claimant's substance abuse.  *See, e.g., Alcantar v. Colvin*, 2015 U.S. Dist. LEXIS 130523 at *54-55, 58 (E.D. Cal. Sept. 28, 2015) (finding no error where the ALJ rejected an opinion, in part, because the physician "never discussed the impact of [a claimant's] substance abuse issues on [the] diagnosis").

Here, the ALJ found that in offering her conclusions, Dr. Collado "failed to address the claimant's ongoing cocaine use and its effect on his mental abilities." (Doc. 9-3 at 22.)  A review of the forms completed by Dr. Collado confirms this conclusion, as she does not refer to Plaintiff's substance abuse, or even identify the mental impairments from which Plaintiff suffered.  (*See* Doc. 9-16 at 33-37, 39-44.)  Accordingly, the ALJ did not err in giving less weight to Dr. Collado's opinions regarding Plaintiff's mental impairments.

3.     Substantial evidence supports the decision to give less weight to the opinion

When an ALJ rejects contradicted opinions of physicians, the ALJ must not only identify specific and legitimate reasons for rejecting those opinions, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830.  Accordingly, because the ALJ articulated specific and legitimate reasons for rejecting the opinion of Dr. Collado, the decision must be supported by substantial evidence in the record.

The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[2]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.; see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The ALJ gave "significant weight" to the opinion of Dr. Lewis, who administered the psychological consultative examination. (Doc. 9-3 at 22.) The ALJ noted, "After extensive psychological testing, Dr. Lewis concluded that the claimant had satisfactory reasoning, abstract thinking, judgment, memory, attention, and concentration, among other things, and the claimant could complete a 3-step command." (*Id.*) During an exam, Dr. Lewis measured Plaintiff's "performance on digit span and simple arithmetic," and asked Plaintiff to respond to questions and interpret information to determine his insight and judgment. (Doc. 9-12 at 110-11.) For example, he was asked to recall numbers and items, and he was able to recite the numbers backwards and "recall all three items after five minutes." (*Id.*) Dr. Lewis found that Plaintiff's attention and concentration were "satisfactory" based upon his "ability to successfully count by 2s to 20 and back to zero" and "complete[] a three-step command." (*Id.* at 111.) She concluded Plaintiff was able to understand, remember and carry out very short and simple instructions; his ability to concentrate was "not significantly impaired;" and his social functioning was "not significantly impaired." (*Id.* at 112.) These findings were adopted by the ALJ, who concluded Plaintiff was able to perform simple routine tasks. (Doc. 9-3 at 17.)

Importantly, when the opinions of a physician "rest[] on independent examination," the opinions constitute substantial evidence. *Tonapetyan*, 242 F.3d at 1149; *see also Orn*, 495 F.3d at 632 (when an examining physician provides independent clinical findings, such findings are substantial

---

[2] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

evidence). The opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d 1149; *Andrews*, 53 F.3d at 1042. Dr. Lewis offered conclusions based upon her examination of Plaintiff. In addition, Dr. Ikawa, who opined Plaintiff "could sustain simple repetitive tasks, relate, and adapt" (Doc. 9-3 at 22), offered an opinion consistent with the findings of Dr. Lewis. Thus, the opinions of Drs. Lewis and Ikawa are substantial evidence that supports the ALJ's decision to give less weight to the opinion of Dr. Collado.

**C.     Plaintiff's Residual Functional Capacity**

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff contends the ALJ erred in assessing his RFC "by failing to include and consider all of [his] impairments." (Doc. 20 at 12, emphasis omitted.) Specifically, Plaintiff asserts the ALJ "failed to account for [his] severe mental impairments as they relate to performing work with supervision, with other employees or the public." (*Id.* at 13.) Plaintiff argues the ALJ also erred by failing "to address [his] leg weakness and balance disorder. (*Id.*) On the other hand, Defendant argues the ALJ's RFC assessment was proper because it "included only the credible limitations 'based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations.'" (Doc. 21 at 10, quoting *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001)).

1.     Mental limitations

Plaintiff contends that he "testified at his hearing before the ALJ that his depression, moods, and auditory hallucinations cause him to retreat and that he doesn't get along with people," and "didn't get along with authority figures." (Doc. 20 at 13, internal quotation marks omitted.) Also,

Plaintiff contends he testified he "had difficulty" following instructions." (*Id.*)  According to Plaintiff, "The ALJ erred in not providing an explanation or a basis for the inconsistency of recognizing [Plaintiff's] mental impairments as severe, yet not associating such limitations with affects in the workplace." (*Id.*)

Importantly, as discussed above, the ALJ properly rejected the credibility of Plaintiff's subjective complaints, and the limitation to "simple routine tasks" is supported by substantial evidence in the record.  Moreover, the Ninth Circuit determined the limitation to unskilled work adequately encompasses a claimant's "moderate mental residual functional capacity limitations." *Thomas*, 278 F.3d at 953, 955; *see also Stubbs-Danielson*, 539 F.3d 1169 (concluding the limitation to "simple, routine, repetitive" tasks accommodated the examining physician's findings that the claimant had "several moderate limitations").  Likewise, the Ninth Circuit concluded a limitation to simple tasks adequately encompasses moderate limitations with social functioning. *See Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x. 15 (9th Cir. 2012) (holding that a residual functional capacity for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations); *see also Langford v. Astrue*, 2008 WL 2073951 at *7 (E.D. Cal. May 14, 2008) ("unskilled work . . . accommodated [the claimant's] need for 'limited contact with others'").  Accordingly, although Plaintiff contends the ALJ did address his mental "limitations with affects in the workplace," the RFC adequately encompasses the limitations supported by the record.

### 2.    Physical limitations

Plaintiff argues the ALJ erred with the RFC because the ALJ failed to address Plaintiff's testimony regarding his difficulty hearing, "leg weakness, and balance disorder." (Doc. 20 at 13.) Again, as discussed above, the ALJ found Plaintiff's testimony lacked credibility, and the ALJ identified medical evidence that undermined Plaintiff's complaints regarding his physical limitations. In finding Plaintiff was able to perform work at the medium exertion level with restrictions for asthma and his seizures, the ALJ gave "significant weight" to the opinion of examining physician Dr. Wagner, as well as "great[] weight" to the opinion of Dr. Ombres.  (Doc. 9-3 at 22.)

As the ALJ observed, Plaintiff told Dr. Wagner that he had "left ear hearing problems," but

"Dr. Wagner noted that the claimant had no problems understanding during the examination due to his hearing problems."  (Doc. 9-3 at 20.)  In addition, Dr. Wagner observed that Plaintiff "was able to get off and on the chair, and walk at a brisk pace without assistance."  (*Id.*)  Plaintiff "had a negative Romberg, normal station, normal gait, normal finger to nose, all ranges of motion were within normal limits, and straight leg raise tests were negative."  (*Id.* at 21.)  Thus, the examination results were "essentially within normal limits."  (*Id.*)  Based upon the examination,

> Dr. Wagner diagnosed left ear decreased hearing with no problems understanding on examination; asthma with clear lungs on examination; and seizures.  He opined that the claimant could sit, stand, and/or walk without limitations, lift and/or carry 50 pounds occasionally and 25 pounds frequently[;] and he should avoid climbing, balancing on ladders or scaffolds, and working around heights, machinery, and chemicals.

(*Id.* at 21, citing Exh. 16F [Doc. 9-12 at 100-04.)  The ALJ adopted these findings in the physical RFC.  (*Compare* Doc. 9-3 at 17 *with* Doc. 9-12 at 104.)

Significantly, because the findings of Dr. Wagner were based upon his independent examination of Plaintiff, they are substantial evidence supporting the ALJ's decision.  *See Tonapetyan*, 242 F.3d at 1149; *Orn*, 495 F.3d at 632.  Likewise, the opinion of Dr. Ombres, who reviewed the record and came to the same conclusions as Dr. Wagner, is substantial evidence.  *See id.*  Thus, the RFC formulated by the ALJ is supported by substantial evidence, and Plaintiff fails to show the ALJ erred in evaluating Plaintiff's physical limitations.

**D.     Reliance upon the Vocational Expert's Testimony**

Plaintiff contends the ALJ erred in relying upon the vocational expert's testimony because the vocational expert did not consider all of his limitations, and the ALJ did not "elicit any explanation as to an apparent discrepancy" between the expert's testimony and the *Dictionary of Occupational Titles*.  (Doc. 20 at 14-15.)

1.     Limitations presented to the VE

When eliciting testimony from a vocational expert, the ALJ must set forth "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration."  *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).  Only limitations supported by substantial evidence must be included. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d

1157, 1163-65 (9th Cir. 2001).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  When the "weight of the medical evidence supports the hypothetical questions posed," the ALJ's findings will be upheld by the court.  *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Here, as discussed above, the limitations in the first hypothetical posed to the vocational expert —which mirrored the RFC—are supported by the medical record, including the opinions of Drs. Wagner, Lewis, Ombres, and Ikawa.  Because the question to the vocational expert included all of Plaintiff's impairments supported by substantial evidence in the record, the ALJ did not err in relying upon the testimony of the vocational expert to find that Plaintiff is able to perform work as a linen room attendant, transporter patient, and counter supply worker.  *See Robbins*, 466 F.3d at 886; *Martinez v. Heckler*, 807 F.2d at 774.

### 2. Reasoning Level 2 and limitation to simple routine tasks

According to Plaintiff, the ALJ erred in relying upon the vocational expert's testimony because "[t]he ALJ failed to inquire whether 'simple routine tasks' are consistent with the DOT requirement[s] [for] a job holder at a Reasoning Level 2."  (Doc. 20 at 15.)

In the *Dictionary of Occupational Titles*, each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" *Salas v. Astrue*, 2011 U.S. Dist. LEXIS 69620 at *16 (E.D. Cal. June 29, 2011), quoting *Grigsby v. Astrue*, 2010 U.S. Dist. LEXIS 5465 (C.D. Cal. Jan. 22, 2010). The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). *Id.*  Reasoning Levels 1 and 2 require the following cognitive functioning:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*DOT*, Appendix C, Section III.

Notably, though a one to two-step instruction limitation would confine a worker to reasoning Level 1, a limitation to simple routine work encompasses both Reasoning Levels 1 and 2. As a result, with an RFC of "simple routine work," Plaintiff has the ability to perform the jobs identified by the vocational expert and the ALJ that require Reasoning Level 2. *See, e.g., Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary. . . and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs"); *Salas*, 2011 U.S. Dist. LEXIS 69620 at * 21-22 (finding a mental RFC for simple routine work limited the claimant to Reasoning Levels 1 and 2); *Grigsby*, 2010 U.S. Dist LEXIS 5465 at *6-7 (explaining a limitation to simple, repetitive work encompassed the ability to perform jobs at Reasoning Level 2, but a limitation to one or two-step instructions limited an individual to Reasoning Level 1). Therefore, there was no conflict with the *Dictionary of Occupational Titles* between the RFC and Reasoning Level 2, and the ALJ properly concluded Plaintiff could perform work in the national economy, including the named positions of transporter patient (DOT 355.677-014, 1991 WL 672947), and counter supply worker (DOT 319.687-010, 1991 WL 672772), which require Reasoning Level 2.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the decision of the ALJ is supported by substantial evidence in the record. Therefore, the conclusion that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, **IT IS HEREBY ORDERED**:

1.   The decision of the Commissioner of Social Security is **AFFIRMED**; and

2.   The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff David Allen Miller.

IT IS SO ORDERED.

Dated:   __September 6, 2016__          _____/s/ Jennifer L. Thurston_____
                                                                  UNITED STATES MAGISTRATE JUDGE

24